IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

AMANDA SCHNEIKER,

    Plaintiff,

vs.

    Case No.: 2:22-cv-01400

COMMUNICATIONS ENGINEERING COMPANY,

    Defendant.

**DEFENDANT COMMUNICATIONS ENGINEERING COMPANY'S
BRIEF IN SUPPORT OF MOTION TO DISMISS OR STAY**

The Court has the discretion to stay or dismiss this case under the *Colorado River* doctrine, and it should. The same parties are already litigating this noncompete dispute in Iowa ("Iowa Lawsuit"). Communications Engineering Company ("CEC") is the natural plaintiff. Amanda Schneiker is a former CEC employee, who CEC alleges breached her noncompetition agreement with CEC. As the aggrieved party, CEC sued her for the breach and for damages and other relief arising from that breach. The noncompete is governed by Iowa law, and the parties agreed to Iowa jurisdiction.

Schneiker's noncompete claim (Count I[1]) (the "NonCompete Claim") is the definition of the "parallel" with the Iowa Lawsuit, and it should be dismissed or stayed. After the Iowa Lawsuit was filed, Schneiker attempted to wrest the forum away from CEC – the natural plaintiff – and move the case to Wisconsin to take advantage of Wisconsin law. Schneiker filed a declaratory

---

[1] Schneiker references "claims for relief." For brevity, in this brief her claims for relief are referenced as "Counts" I-VII.

1

judgment action, asking a Wisconsin court to "declare" she was not liable for what CEC alleged in the Iowa Lawsuit. It involves the same noncompete. The *Colorado River* doctrine exists to avoid such piecemeal lawsuits and such litigation tactics, and the Seventh Circuit has upheld *Colorado River* abstentions precisely to avoid what is happening here – a state court defendant wresting venue away from the natural plaintiff in that litigation, and creating duplicative and potentially inconsistent litigation in federal court. Moreover, at least one court in this District has recognized the tactic of trying to forum shop noncompete disputes to Wisconsin to take advantage of Wisconsin's unique noncompete law.

Whether the additional issues she raises – specifically, that CEC (allegedly) failed to pay her commissions she was owed (Counts II-VII) – should be dismissed or stayed are, candidly, dependent on Schneiker. If Schneiker intends to raise a failure to pay commissions as a defense to enforcement of her noncompete, the claims are parallel, and should be stayed. If she does not, the claims may proceed in this Court.

The Court should dismiss or stay this case in favor of the Iowa Lawsuit.

## **FACTS**

CEC is an Iowa corporation with its principal place of business in Hiawatha, Iowa. (Dkt. #1-1, Compl., ¶ 2) On or about May 16, 2019, CEC hired Schneiker as a Director of Healthcare Sales. (*Id.* at ¶ 7)

As a condition for getting that job and becoming a CEC employee, Schneiker signed a May 16, 2019 Non-Disclosure and Non-Competition Agreement (the "Agreement" or the "NonCompete"). (*Id.* at ¶ 9; Agreement attached thereto as Exh. A) Per the Agreement, and in exchange for her employment, Schneiker agreed to certain post-employment restrictive covenants

2

in exchange for her employment. (*Id.* at ¶ 11a.-d.; Exh. A) Schneiker also agreed that Iowa law would govern the Agreement:

> This Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of Iowa, without regard to conflicts of law principles.

(*Id.* at ¶ 13; Exh. A, ¶ 7) Schneiker also agreed the parties could litigate their claims "arising out of or relating to the Agreement in Iowa:

> Employee hereby expressly consents to, and waives any objection to the exercise of, the jurisdiction of the state and federal courts in the State of Iowa with respect to any action or proceeding arising out of or in connection with this Agreement.

(*Id.*)

### The Iowa Lawsuit for Breach of the Agreement

On October 25, 2022, CEC filed the Iowa Lawsuit in the Iowa District Court for Linn County (the "Iowa Petition"). (Declaration of Michael D. Huitink ("Huitink Decl."), ¶ 2; Exh. 1) CEC alleged that Schneiker, the "Defendant," violated the Agreement because, after her employment with CEC ended:

- "Defendant has commenced employment with Hillrom, a competitor of CEC." (*Id.*, ¶ 11);
- "Defendant, on behalf of Hillrom and in connection with her employment with Hillrom, has been selling and/or attempting to sell competing nurse call system products to one or more CEC customers." (*Id.*, ¶ 12)

CEC alleged the "Defendant's sales activities on behalf of Hillrom are in direct violation of the Agreement" (*Id.*, ¶ 15), specifically the Agreement's restrictive covenants regarding sales activities within a fifty (50) mile radius of a CEC office (*Id.*, ¶ 9), and solicitation of CEC customers with whom she had contact (*Id.*, ¶ 8).

3

The Iowa Lawsuit is still pending. (Huitink Decl., ¶ 3; Exh. 2) Currently, Schneiker has asked the Iowa District Court to rule on whether it is the proper venue for the litigation. (*Id.*) The parties are in the midst of briefing that motion. (*Id.*)

**Schneiker's Wisconsin Lawsuit**

Over a week after the Iowa Lawsuit was filed, Schneiker filed this lawsuit in Waukesha County Circuit Court (the "Wisconsin Complaint"). (Dkt. #1-1) The Wisconsin Complaint alleges Schneiker entered into the same Agreement as a condition of her employment, and sets forth the same restrictive covenants, that are set forth in the Iowa Petition. (*Id.*, ¶¶ 11a.-d.)

The NonCompete Claim seeks a declaratory judgment about "the parties' rights and obligations under the Agreement." (*Id.*, ¶ 46) That includes a declaration that Schneiker is not liable because she has not violated the restrictive covenants (as alleged in the Iowa Lawsuit), or because the restrictive covenants should not be enforced against her (as CEC sued to enforce in the Iowa Lawsuit). (*Id.*, ¶¶ 42, 43) In its request for relief, Schneiker specifically asks a Wisconsin court to declare, among other things, "[t]hat the Agreement does not prohibit Schneiker from engaging in the activities that CEC alleges violate the Agreement *in the Iowa Complaint*." (*Id.*, p. 15) (emphasis added)

In addition to seeking this declaratory relief, Schneiker alleges that CEC did not pay her certain commissions she earned when she was in CEC's employ – the employment she received in exchange for signing the Agreement. (*Id.*, ¶ 50; Counts II-VII)

## ARGUMENT

The *Colorado River* abstention exists to avoid the piecemeal litigation of claims, especially in cases like, this, when a state court defendant tries to wrest venue away from a natural plaintiff by filing an after-the-fact lawsuit in another state's federal court. Schneiker's declaratory

4

judgment action on the NonCompete Claim (Count I) is parallel to – in fact, a mirror image of – the NonCompete claim in the Iowa Lawsuit. It should be stayed or dismissed as a matter of law.

In addition, Schneiker's wage claims (Counts II-VII) should also be dismissed or stayed, unless Schneiker agrees the claims are independent of the NonCompete, and will not be raised as a defense to its enforcement. If she intends to tie the two claims together, and raise the alleged failure to pay commissions as a defense to the enforcement of the NonCompete, that claim is also parallel with the Iowa Lawsuit, and should be dismissed or stayed as well.

I. **THE *COLORADO RIVER* DOCTRINE EXISTS TO AVOID LITIGATING THE SAME ISSUES IN FEDERAL COURT THAT ARE PENDING IN A PRIOR STATE COURT LAWSUIT.**

**A. Overview.**

The so-called *Colorado River* doctrine (established by the Supreme Court in *Colorado River Conservation District v. U.S.*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)) "permits a district court to dismiss or stay an action when there is an ongoing parallel action in state court." *Johnson Controls, Inc. v. Am. Motorists Ins. Co.*, 719 F. Supp. 1459, 1464 (E.D. Wis. 1989) (quoting *La Duke v. Burlington Northern RR Co.,* 879 F.2d 1556, 1558 (7th Cir.1989)). It exists as an exception to the obligation of federal courts to exercise the jurisdiction given to them. *Id.*

Federal courts apply "a two-pronged test to determine when this deference to a parallel state action should occur." *Id.* "First, the district court must determine whether the actions are 'parallel.'" *Id.* (*Interstate Material Corp. v. City of Chicago,* 847 F.2d 1285, 1287 (7th Cir.1988)). If the actions are parallel, a federal court proceeds to "[t]he second prong in the *Colorado River* analysis" which "is a multifactor balancing test" that includes "a number of factors that might justify a decision to refrain from exercising jurisdiction over an action." *Id.* at 1465.

### B. "Parallel" Litigation.

It is not necessary that two cases are identical, or contain identical claims, for two actions to be parallel. As the Seventh Circuit explained:

> To be parallel, however, it is not necessary that there be formal symmetry between the two actions. Generally, a suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues in another forum. Among other things, to determine whether two suits are parallel, ***a district court should examine whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues.***

*Tyrer v. City of S. Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006) (citations and quotations omitted) (emphasis added). Actions are parallel, for example, when the two lawsuits involve substantially the same parties, and the two lawsuits "will be resolved largely by reference to the same evidence." *Id.* at 752-753 (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans,* 911 F.2d 993, 1005 (5th Cir.1990) for the proposition that "[t]here is little to be gained from rehashing the *same evidence* in another forum .... The district court thus properly concluded that the desire to avoid piecemeal litigation counseled in favor of a stay."). The claims in the two cases need not be identical for that to occur, rather they are parallel and warrant a *Colorado River* abstention if they are "inextricably interlinked," such that both courts will be resolving many of the same factual and legal issues. *Id.*

### C. *Colorado River* Factors.

If two actions are parallel, federal courts proceed to consider whether an abstention is warranted due to the "four primary factors" set forth in the *Colorado River* case: "whether the same *res* is involved in both cases; inconvenience to the parties; the need to avoid piecemeal litigation; and the order of state/federal filings." *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d at 754. "This list was expanded by the Supreme Court in *Moses H. Cone*, 460 U.S. at 23–27, 103 S.Ct. 927, and this [Seventh] circuit has refined the analysis to a consideration of ten factors:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Id.* "[N]o single factor is 'necessarily determinative.'" *Id.* "'The weight to be given any one factor is determined solely by the circumstances of the particular case—there is no mechanical formula by which to determine when a [*Colorado River* abstention] is appropriate." *Schneider Nat'l Carriers, Inc. v. Carr*, 903 F.2d 1154, 1157 (7th Cir.1990). All that is required is that a federal court exercise "a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise." *Tyrer*, 456 F.3d at 754 (upholding District Court's grant of a *Colorado River* abstention).

### D. Claim-By-Claim Application.

The *Colorado River* abstention analysis is conducted on a claim-by-claim basis. A federal court may stay claims in a case that are parallel to state court litigation, while staying other claims that are not so parallel. *See, e.g., Sequin, LLC v. Renk,* No. CV 20-62WES, 2020 WL 5995205, at *7 (D.R.I. Oct. 2, 2020). "[T]he inclusion in the federal case of additional claims that are not parallel is not an impediment to a *Colorado River* stay." *Id.* "[Federal] [c]ourts have repeatedly found that a federal court may partially stay the portion of the case that is parallel while allowing claims that are not parallel to proceed." *Id.*; *see also Harris v. TD Ameritrade, Inc.*, No. 17-CV-6033 (LTS) (BCM), 2018 WL 1157802, at *6, n. 6 4 (S.D.N.Y. Feb. 14, 2018) (*Colorado River* stay affects "some but not all of a plaintiff's claims while awaiting decision in a parallel state court case"; listing cases finding partial stays permissible); *Abe v. New York Univ.*, No. 14-cv-9323 (RJS), 2016 WL 1275661, at *3-10 (S.D.N.Y. Mar. 30, 2016) (federal claims based on ADEA and Title VII stayed because state law claims based on same facts sufficiently parallel; ERISA claim

7

not parallel and not stayed); *Mass. Biologic Labs. of the Univ. of Mass. v. MedImmune, LLC*, 871 F. Supp. 2d 29, 33 (D. Mass. 2012) (court may "stay the federal action *or certain of the claims,* pending the resolution of the state court action, in the interests of cooperative federalism and judicial economy") (emphasis added).

## II. SCHNEIKER'S NONCOMPETE CLAIM (COUNT I) IS PARALLEL – IN FACT, A MIRROR IMAGE OF – THE IOWA LAWSUIT AND THE COURT SHOULD DISMISS OR STAY IT.

Under those tests, a *Colorado River* abstention is warranted to avoid duplicative litigation of the Iowa Lawsuit on the NonCompete Claim (Count I) between these same parties.

### A. The Two NonCompete Claims Are Parallel, So The Court Can Dismiss or Stay Under *Colorado River* Doctrine.

Whether Schneiker's NonCompete Claim is parallel requires little discussion. The NonCompete claims in both cases are virtually identical, mirror images of each other. They exist between the same two parties. They involve the exact same issues. This is the textbook definition of a parallel claim under a *Colorado River* analysis.

### B. Under the *Colorado River* Factors, the Court Should Dismiss or Stay This Lawsuit To Avoid Piecemeal Litigation.

In *Tyrer v. City of S. Beloit, Ill.*, the Seventh Circuit upheld the District Court's grant of a *Colorado River* abstention in favor of a state court proceeding, even though federal law applied to the claims, and even though the federal forum was not inconvenient:

> Specifically, the court determined that, although the federal forum was not inconvenient (factor 2) and although federal law provides the rule of decision (factor 5), allowing the federal proceeding to continue would promote "piecemeal and duplicative litigation as both courts are capable of deciding the issues raised" (factor 3). App. at 40. It also concluded that the state action was much further along procedurally than the federal action (factor 7) and that "the state court action will clearly allow plaintiff to vindicate any violation of his federal rights" (factor 6). *Id.* On balance, the court concluded, the "factors overall support abstention under the *Colorado River* doctrine." *Id.*

456 F.3d 744, 755. The Seventh Circuit noted the danger of piecemeal litigation in upholding the District Court's abstention:

> The district court's concern over the danger of piecemeal litigation is also well-founded. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *LaDuke v. Burlington N. R. Co.,* 879 F.2d 1556, 1560 (7th Cir.1989) (internal quotation marks omitted). As the district court recognized, if Mr. Tyrer pursues both his federal and his state action, substantially similar issues will be litigated simultaneously in different forums. As we explained in LaDuke, this circumstance gives rise to two problems:
>
>> First, a party may try to accelerate or stall proceedings in one of the forums in order to ensure that the court most likely to rule in its favor will decide a particular issue first. Second, the possibility exists that one court, unaware that the other court has already ruled, will resolve an issue differently and create a conflict between the two forums.

*Id.* at 755-756. It also rejected the plaintiff's argument that a stay was not warranted simply because "the issues in the federal and state suit are not identical" and some of the differing claims were not dispositive of others, noting "the danger of piecemeal litigation does not turn on formal identity of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority." *Id.* at 756. Of particular concern was the harm to the judicial system in using gamesmanship to create duplicative litigation in different forums:

> When a case proceeds on parallel tracks in state and federal court, the threat to efficient adjudication is self-evident. But judicial economy is not the only value that is placed in jeopardy. The legitimacy of the court system in the eyes of the public and fairness to the individual litigants also are endangered by duplicative suits that are the product of gamesmanship or that result in conflicting adjudications.

*Id.,* citing *Lumen Const., Inc. v. Brant Const. Co., Inc.,* 780 F.2d 691, 694 (7th Cir. 1985) Per the Court, "[i]n this case, allowing the two suits to proceed concurrently would waste the parties' resources, risk duplicative rulings and reward a strategic gamesmanship that has no place in a dual system of federal and state courts." *Id.*

This lawsuit presents an even stronger case for a *Colorado River* abstention on the NonCompete Claim than did the *Tyrer* case. Unlike in *Tyrer*, the NonCompete Claim is identical

9

to CEC's claim in the Iowa litigation. Litigating Schneiker's NonCompete Claim here presents the same danger of piecemeal litigation, inconsistent verdicts, and duplicative rulings the Seventh Circuit noted in *Tyrer*. And, it involves an even greater act of procedural gamesmanship – Schneiker agreed to the jurisdiction of Iowa courts on her noncompete claims, and that Iowa law governed the Agreement, but she filed this case in Wisconsin for the purpose of trying to have a Wisconsin court apply Wisconsin law in disregard of that provision. (*See* Dkt. #1-1, ¶ 39)

Courts in this District have noted that litigation tactic in declining to hear declaratory judgments filed by plaintiffs seeking to capitalize on the benefits of Wisconsin law. *See, e.g., Reed v. PCM Sales, Inc.*, No. 16-C-0191, 2016 WL 9412449, at *2 (E.D. Wis. July 22, 2016) ("I also note that it appears that Reed filed this action to wrest the choice of forum from PCM, the natural plaintiff" and "did so because Wisconsin law was favorable to [Reed's] position"). So too, Schneiker filed this lawsuit in Wisconsin after the Iowa Lawsuit was already pending in a court to which she agreed to jurisdiction, and is attempting to wrest the choice of forum away from CEC, the natural plaintiff. Factor 3 – avoiding piecemeal litigation – weighs strongly in favor of a stay.

The remaining factors either support, or do not negate, the propriety of a *Colorado River* abstention to avoid piecemeal litigation based on forum shopping for Wisconsin law.

### *1) whether the state has assumed jurisdiction over property;*

There is no property at issue that is material to the legal and factual issues between CEC and Schneiker.

### *2) the inconvenience of the federal forum*

Neither forum is inconvenient for either party, but Schneiker consented to jurisdiction in the state or federal courts in Iowa. Moreover, Schneiker worked and communicated with employees and customers in Iowa. This factor does not weigh strongly against an abstention.

### 3) the desirability of avoiding piecemeal litigation;

As discussed above, this strongly favors a *Colorado River* abstention.

### 4) the order in which jurisdiction was obtained by the concurrent forums;

The Iowa Lawsuit was first-filed, although it certainly has not progressed as far as the state court lawsuit in *Tyrer*. This factor mildly supports, and does not weigh against, an abstention.

### 5) the source of governing law, state or federal;

There are no federal law issues in this case, or in the Iowa Lawsuit. The parties chose Iowa law. This factor favors an abstention.

### 6) the adequacy of state-court action to protect the federal plaintiff's rights;

There is no colorable argument that the Iowa District Court (state court) cannot protect plaintiff's rights. This factor weighs in favor of an abstention.

### 7) the relative progress of state and federal proceedings;

The Iowa Lawsuit has progressed further, and the parties are actually in the midst of briefing forum issues in that case. This factor favors an abstention.

### 8) the presence or absence of concurrent jurisdiction;

There is concurrent jurisdiction, which means each court could reach duplicative or inconsistent rulings. This weighs in favor of an abstention.

### 9) the availability of removal;

Schneiker could have removed the Iowa Lawsuit to federal court, but chose not to do so. This factor weighs in favor of an abstention.

### 10) the vexatious or contrived nature of the federal claim.

There is no federal claim in this case at all. This factor is either neutral, or does not weigh strongly against an abstention.

11

### C. Conclusion.

It is difficult to define a claim more ripe for a *Colorado River* abstention than Schneiker's claim here. The actions are mirror images (certainly parallel), and the *Colorado River* factors weigh in favor of an abstention. The Court should dismiss or stay this NonCompete Claim in favor of a *Colorado River* abstention.

### III. THE COURT SHOULD DISMISS SCHNEIKER'S REMAINING COMMISSION CLAIMS UNLESS SHE CONCEDES THEY ARE INDEPENDENT OF THE NONCOMPETE.

Schneiker remaining claims allege that CEC failed to pay her commissions owed to her as a CEC employee. (Dkt. #1-1, Counts II – VII) Whether these claims should be dismissed or stayed under the *Colorado River* doctrine depends on whether Schneiker intends to raise them as a defense to the NonCompete in the Iowa Lawsuit.

To be clear, CEC does not believe these claims are related. Nothing in the Agreement ties its enforceability to any Commission Agreement or Commission Plan that Schneiker alleges CEC breached. (*See, generally,* Dkt. #1-1) Schneiker does not allege (to CEC's best understanding) that the claims are related. If the claims are truly independent, and Schneiker acknowledges such, CEC agrees her commission claims may proceed in this Court.

It is unclear, however, whether Schneiker intends to raise these commissions issues as a defense in the Iowa Lawsuit. There is precedent in Iowa law for parties to defend against a lawsuit in that manner. *See, e.g., Neville v. Milliron,* 840 N.W.2d 728 (Iowa Ct. App. 2013) ("the trial court found defendant "failed to pay" and its "prior breach independently excused [employee] from the covenant not to compete").

If Schneiker intends to raise such commissions payments as a defense in the Iowa Lawsuit, then her NonCompete Claim and her commissions claims are parallel to the Iowa Lawsuit under

12

the Seventh Circuit's test set forth in *Tyrer*. In that event, the Iowa court will hear the same evidence (and issue rulings) regarding whether or not CEC breached any obligation to pay Schneiker commissions. *Tyrer v. City of S. Beloit, Ill.*, 456 F.3d at 752-753 (7th Cir. 2006) (two lawsuits are parallel if the involve the same parties, will be decided "with reference to the same evidence," and are "inextricably intertwined" because two courts will be resolving many of the same factual and legal issues). And, if Schneiker links the two issues, the *Colorado River* factors favor an abstention for all of the same reasons set forth above.

For those reasons, the Court should dismiss or stay the remainder of Schneiker's claims – all of which relate to CEC's alleged failure to pay commissions – unless Schneiker concedes she is not using such claims as defenses to the NonCompete in the Iowa Lawsuit.

## **CONCLUSION**

This Court has the discretion to dismiss or stay this case under the *Colorado River* doctrine. For the foregoing reasons, the Court should grant a *Colorado River* abstention and dismiss or stay this lawsuit regarding Count I, and should dismiss or stay the remaining Counts, unless Schneiker concedes she is not suing such claims as defenses to enforcement of the NonCompete in the Iowa Lawsuit.

Dated this 9th day of December, 2022.

        Respectfully submitted,

        ATTORNEYS FOR DEFENDANT,
        COMMUNICATIONS ENGINEERING
        COMPANY

        s/ Michael D. Huitink
        Michael D. Huitink
        Wisconsin State Bar No. 1034742
        Willem J. Noorlander
        Wisconsin State Bar No. 1033089
        Stephanie Hanold Anacker
        Wisconsin State Bar No. 1051845

        SBR LAW GROUP LLC
        675 N. Barker Road, Suite 300
        Brookfield, WI 53045
        Phone: 262-513-3315
        Fax:    262-513-3318
        Email: mhuitink@sbrlaw.us
        Email: wnoorlander@sbrlaw.us
        Email: sanacker@sbrlaw.us