UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AMANDA SCHNEIKER,

            Plaintiff,

v.                                                                            Case No. 22-cv-1400-bhl

COMMUNICATIONS ENGINEERING
COMPANY,

            Defendant.

## ORDER GRANTING PARTIAL MOTION TO DISMISS

In this lawsuit, Plaintiff Amanda Schneiker asserts nine claims against her former employer, Defendant Communications Engineering Company (CEC). (ECF No. 17.) CEC has moved to dismiss three of those claims: Count III (civil theft); Count VIII (tortious interference with contract); and Count IX (unjust enrichment). (ECF No. 21.) CEC argues that Count III fails because Wisconsin's civil theft statute does not apply to Schneiker's claim that CEC is improperly withholding unpaid commissions. CEC challenges Counts VIII and IX on several grounds, including that third party Select Sound Service, Inc. (Select Sound) is a required party for adjudication of both claims and cannot be joined, necessitating dismissal of those counts. Because the Court agrees that all three counts are legally flawed, CEC's motion will be granted and Counts III, VIII, and IX dismissed.

### FACTUAL BACKGROUND[1]

In the period before May 2019, Plaintiff Schneiker was employed as Vice President of Sales for Select Sound, a Wisconsin corporation in the business of selling healthcare communications devices and services. (ECF No. 17 ¶¶1, 3, 8.) In late 2018, Select Sound agreed to sell certain assets to Defendant CEC pursuant to a written Asset Purchase Agreement.

---

[1] These facts are derived primarily from Schneiker's amended complaint, (ECF No. 17), the allegations in which are presumed true when considering a motion to dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–56 (2007). Additional facts are derived from the Asset Purchase Agreement between CEC and Select Sound, (ECF No. 22-1), and Retention Agreement between Schneiker and Select Sound, (ECF No. 22-2), both of which are referenced in the amended complaint. *See Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 895 (7th Cir. 2018) (confirming propriety of considering documents referred to in complaint that are central to claims presented).

(*Id.* ¶9.) More specifically, CEC acquired Select Sound's "Rauland account and relationship." (*Id.* ¶10.) Rauland is a manufacturer of healthcare products that Select Sound marketed to hospitals. (*Id.* ¶8.) In exchange, CEC agreed to pay Select Sound an up-front payment along with additional "earn-out" payments that would be due if CEC hit certain net sales and revenue targets on "Qualifying Sales." (*Id.* ¶¶13–14; ECF No. 22-1 at 5–10.)

Prior to the transaction, Schneiker was involved in Select Sound's relationship with Rauland and was therefore tagged with assisting in the transition of the Rauland account to CEC. (ECF No. 17 ¶11.) CEC's purchase of Select Sound's assets was specifically conditioned on Schneiker terminating her employment with Select Sound and taking an executive role with CEC following the sale. (*Id.* ¶15.)

To facilitate Schneiker's participation, Select Sound entered into a Retention Agreement with Schneiker (and her husband) on February 12, 2019 (later amended on May 10, 2019). (*Id.* ¶16; ECF No. 22-2.) Schneiker alleges that CEC was aware of the Retention Agreement and its terms and "communicated its desire to have Select Sound secure Schneiker's agreement thereto," but admits CEC was not a party to that contract. (ECF No. 17 ¶¶17, 80.) The Retention Agreement, as amended, called for Schneiker to receive a lump sum of $250,000 from Select Sound, followed by a conditional "earnout bonus" for each of the following four years (2020 through 2023). (ECF No. 17 ¶18; ECF No. 22-2 at 7–8.) These conditional bonuses were derivative of Select Sound's agreement with CEC. (*See* ECF No. 17 ¶18 n.1; ECF No. 22-2 at 7–8.) Under the Retention Agreement, Select Sound would pay Schneiker up to $150,000 per year, with the actual payment proportional to the earnout payments Select Sound received from CEC. (ECF No. 17 ¶18.) Thus, if Select Sound received fifty percent of its maximum potential earnout payment from CEC in a given year, it would be obligated to pay Schneiker that same fifty percent of her maximum earnout, or $75,000. (*Id.* ¶18 n.1; ECF No. 22-2 at 8.)

Schneiker began work as CEC's Director of Healthcare Sales in May 2019. (*Id.* ¶22.) CEC paid Schneiker both salary and commissions, with the commissions pursuant to a yearly "Compensation Plan." (*Id.* ¶27.) Her 2021 Compensation Plan called for her to earn commissions on new business projects, managed services contracts, hold accounts, and "Rauland Enterprise Opportunities." (*Id.* ¶ 28.)

CEC terminated Schneiker's employment on October 4, 2021. (*Id.* ¶32.) She alleges that, prior to her termination, she earned at least $190,000 in commissions. (*Id.* ¶¶29, 36.)

Despite "multiple demands" for payment, CEC has not paid Schneiker any portion of the unpaid commissions. (*Id.* ¶¶34–37.) On February 15, 2023, Schneiker, through counsel, made a specific demand to CEC for unpaid wages and commissions in the amount of $49,918.85, reflecting the amount she could "then determine that CEC knew or should have known were owed to Schneiker." (*Id.* ¶53.)

Prior to her termination, Schneiker contends she satisfied the requirements of the Retention Agreement and received the initial $250,000 payment from Select Sound but has not received any of the other earnout bonuses due her under that contract. (*Id.* ¶¶20–21.) She blames CEC for this, alleging that CEC has "improperly and artificially suppress[ed] the Qualifying Sales in order to prevent any earnout bonus being paid to Select Sound during each year." (*Id.* ¶21.) She claims that this conduct has in turn interfered with her "right to receive her yearly bonus payments under the Retention Agreement." (*Id.*) She alleges CEC interfered with her rights to receive payment for the years 2020 through 2023 and did so "maliciously and/or in and through an intentional disregard of [her] rights." (*Id.* ¶¶81, 83.)

## LEGAL STANDARD

In resolving a Rule 12(b)(6) motion to dismiss, the Court must "accept all well-pleaded facts as true and draw reasonable inference in the plaintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016) (citing *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013)). A complaint will survive if it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court must similarly accept the allegations in the complaint as true when considering a Rule 12(b)(7) motion to dismiss for failure to join a party, but the Court may also "go outside the pleadings and look to extrinsic evidence." *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2, 480 n.4 (7th Cir. 2001) (citing *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993); *Capitol Leasing co. v. Fed. Dep. Ins. Corp.*, 999 F.2d 188, 191 (7th Cir. 1993)). The Court engages in a two-part analysis to determine if dismissal is appropriate. *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999). First, the Court determines if the absent party is a "required party" (also referred to as a "necessary party") under Rule 19(a)(1). *Id.* If the Court determines

that a party is required but cannot be joined, it must "determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). If the absent party is "indispensable" to the litigation, dismissal is proper under Rule 12(b)(7). *Davis Cos.*, 268 F.3d 477 at 481 (quoting *Thomas*, 189 F.3d at 667).

## ANALYSIS

CEC seeks to dismiss Counts III, VIII, and IX of Schneiker's amended complaint. CEC argues that Count III must be dismissed because Wisconsin law does not allow Schneiker to convert a breach of contract claim to a civil theft claim under Wis. Stat. §§ 895.446, 943.20(1)(b). As for Counts VIII and IX, CEC raises a number of arguments for dismissal including failure to join an indispensable party (Select Sound) under Federal Rule of Civil Procedure 19. As explained below, the Court largely agrees with CEC's arguments. Accordingly, the Court will grant CEC's motion and dismiss Counts III, VIII, and IX.

**I.      Schneiker Fails to State a Claim for Civil Theft.**

In Count III of the amended complaint, Schneiker asserts a statutory claim for civil theft under Wis. Stat. §§ 895.446, 943.20(1)(b).[2] Section 895.446 creates a civil cause of action for any person who suffers damage or loss as a result of an intentional violation of various theft-related criminal statutes, including Section 943.20(1)(b). Under Section 943.20(1)(b), a person who holds funds for another cannot use, transfer, conceal, or retain money in a manner contrary to his or her authority and without the owner's consent, with intent to convert the funds. Importantly, the money at issue must belong to someone other than the defendant. "Under Wisconsin law, civil theft requires the victim to have an ownership interest in the property stolen." *IBS, Inc. v. Ameritas Life Ins. Corp.*, No. 23-C-1097, 2023 WL 9002812, at *2 (E.D. Wis. Dec. 28, 2023) (citing *Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 494 (7th Cir. 2019)). "It is not enough for a plaintiff to allege that the defendant owes [her] money." *Id.*

Schneiker claims that CEC violated Section 943.20(1)(b) and is therefore liable for civil theft under Section 895.446 because CEC has wrongfully withheld at least $49,918.85 in wages and commissions owed to her despite her explicit demands for payment. (ECF No. 17 ¶53.) Accepting her allegations as true, Schneiker states a claim for breach of contract, but not civil

---

[2] Schneiker's amended complaint mistakenly cites to Wis. Stat. § 943.20(B), which does not exist. In her response to CEC's motion to dismiss, Schneiker correctly identifies the relevant statutory provision as Wis. Stat. § 943.20(1)(b). (*See* ECF No. 17 at 10; ECF No. 23 at 21.) The Court will forgive Schneiker's typographical error.

theft. Her claim is that she is not being paid amounts due her under a contract; this is not civil theft. In *IBS*, this Court recently dismissed a similar claim predicated on a defendant's alleged failure to pay commissions the plaintiff insisted were due under the parties' contract. As the Court explained, "[w]hether [the plaintiff] is contractually entitled to such payment or not, [the defendant's] failure to pay is not theft." *IBS*, 2023 WL 9002812, at *3. While the claims in *IBS* were brought under different subsections of Section 943.20, the same logic applies here. Schneiker is alleging that CEC breached her employment contract by refusing to pay her wages and commissions she is owed. In other words, she's alleging that CEC owes her money under a contract. *See id.* at *2. She does not, and cannot, allege that CEC stole money that it was holding for her.

*Aslanukov v. American Express Travel Related Services Company*, 426 F. Supp. 2d 888 (W.D. Wis. 2006), is also instructive. In *Aslanukov*, the plaintiff purchased two travelers checks from American Express, which he alleged were stolen. *Id.* at 889. After American Express denied his request for a refund on grounds that he had not satisfied the criteria specified in the purchase contract, the plaintiff brought suit under Section 943.20(1)(b) and the precursor to Section 895.446, alleging that American Express had "retained possession of [his] money without his consent." *Id.* at 892 (alterations in original). American Express moved to dismiss on grounds that Section 943.20(1)(b) "criminalizes embezzlement by fiduciaries and conversion of money or negotiable instruments, whereas plaintiff's allegations demonstrate that this case presents a simple breach of contract scenario in which the parties to an arm's length transaction have a good faith dispute concerning whether all of the conditions precedent to a refund have been satisfied." *Id.* The court agreed and dismissed the claim, concluding that "a simple breach of contract scenario" does not amount to criminal conduct and Section 943.20(1)(b) therefore did not apply. *Id.* at 893. Schneiker's allegations come no closer to stating a claim for civil theft, despite her arguments to the contrary. If every time a plaintiff "provided [] services for which [a defendant] didn't pay her," (ECF No. 23 at 22), she could sustain a civil theft claim, then every breach of an employment agreement would constitute theft. That is not Wisconsin law.

To avoid this result, Schneiker points to this Court's recent decision in *Rodriguez v. Expert Home Exteriors, LLC*, No. 22-CV-0223-BHL, 2023 WL 2326339 (E.D. Wis. Feb. 21, 2023). In *Rodriguez*, the Court granted a default judgment to plaintiff construction workers on claims for theft by contractor pursuant to Wis. Stat. § 779.02(5) and civil theft pursuant to

Sections 943.20(1)(b) and 895.446 after the defendants were paid $130,000 for a construction project but failed to pay wages to the plaintiffs for their work on the project. But *Rodriguez* is inapplicable because the moneys at issue were trust funds. *Id.* at *2. Under Section 779.02(5), "all moneys paid to any prime contractor or subcontractor by any owner for improvements, constitute a trust fund only in the hands of the prime contractor or subcontractor to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor . . . until all the claims have been paid . . . ." Further, the statute explicitly states that use of those funds for any other purpose "is theft by the prime contractor or subcontractor of moneys so misappropriated and is punishable under [Section] 943.20." § 779.02(5). Thus, the $130,000 paid to the *Rodriguez* defendants was statutorily required to be held in trust, allowing plaintiffs in that case to sue under Section 895.446. No such statute applies here. Accordingly, Count III will be dismissed.

## II. Counts VIII and IX Cannot Be Litigated Without Select Sound.

In Counts VIII and IX of the amended complaint, Schneiker alleges that CEC is liable to her for tortious interference with contract and unjust enrichment. Both claims relate to Schneiker's allegation that CEC "intentionally and artificially" suppressed its Qualifying Sales as defined in the Asset Purchase Agreement, causing Schneiker not to receive certain payments under her Retention Agreement with Select Sound. CEC offers a number of arguments for dismissal of both counts, including challenges under Rule 12(b)(7) on grounds that Select Sound is a required party that cannot feasibly be joined, necessitating dismissal under Rule 19. For the reasons explained below, the Court agrees and will dismiss Counts VIII and IX.

### A. Select Sound Is a Required Party.

In deciding whether dismissal is appropriate based on the Court's inability to join a nonparty, the Court must first determine whether the nonparty is "required" for adjudication of the claim. *See* Fed. R. Civ. P. 19. Under Rule 19(a), a non-party is required to be joined if: (1) the Court cannot accord complete relief among existing parties in its absence; or (2) the nonparty has an interest relating to the subject of the litigation and either (a) that interest may be impaired or impeded in its absence or (b) its absence will subject an existing party to a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1). A party to a contract at issue in the litigation is, ordinarily, a required party under Rule 19(a). *U.S. ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 478–49 (7th Cir. 1996).

CEC argues that Select Sound is a required party because Schneiker is attempting to litigate Select Sound's right to payment under the Asset Purchase Agreement. (ECF No. 22 at 13.) Thus, Select Sound has an interest in the outcome of the claim and this Court's resolution of that issue may impair Select Sound's rights under that contract, or force CEC to defend the same "earnout" claims under the Asset Purchase Agreement in multiple lawsuits with potentially inconsistent or duplicative results. (ECF No. 24 at 4.)

Schneiker insists she is not attempting to litigate Select Sound's rights under the Asset Purchase Agreement, (ECF No. 23 at 12), but her pleadings provide otherwise. As she alleges, the Retention Agreement between Schneiker and Select Sound, which Schneiker alleges CEC tortiously interfered with, is explicitly derivative of the Asset Purchase Agreement between CEC and Select Sound:

> 18. The Retention Agreement required Select Sound to pay Schneiker a retention bonus that consisted of two parts, which mirrored the payments due from CEC to Select Sound pursuant to the agreement between CEC and Select Sound. . . .
>
> 38. On information and belief, CEC has also continued to intentionally suppress Qualifying Sales after Schneiker's CEC employment terminated, causing CEC to not pay out any earnout amount to Select Sound in either May or June of 2022 and 2023, which has interfered with Schneiker's right to receive a yearly bonus from Select Sound under the Retention Agreement for those years.

(ECF No. 17 ¶¶18, 38.)

The "Qualifying Sales" that Schneiker alleges CEC is suppressing are defined by the Asset Purchase Agreement. And Schneiker's alleged right to receive earnout bonuses under the Retention Agreement is expressly conditioned on Select Sound receiving earnout payments from CEC under the Asset Purchase Agreement. Thus, as pleaded, Schneiker is only entitled to bonuses under the Retention Agreement if Select Sound is entitled to receive parallel payments from CEC. Thus, in order for CEC to have tortiously interfered with Schneiker's rights under the Retention Agreement (or been unjustly enriched), it necessarily must have breached the terms of the Asset Purchase Agreement by failing to pay Select Sound earnout payments based on the Qualifying Sales it allegedly suppressed. In other words, it is impossible for the Court to award Schneiker the relief she requests (the bonuses she is allegedly entitled to under the Retention

Agreement) without also determining that CEC breached its contract with Select Sound. This makes Select Sound a required party.

Schneiker's arguments to the contrary are unavailing. Select Sound clearly has an interest in this litigation, as a party to both the Asset Purchase Agreement and Retention Agreement. As explained above, the Court cannot find that CEC is liable to Schneiker on Counts VIII or IX without also finding it liable to Select Sound for breach of the Asset Purchase Agreement, but without the authority to award relief to Select Sound. Such a ruling would necessarily subject CEC to either multiple or inconsistent obligations in any dispute with Select Sound over the same earnout payments at issue here.

B. **Select Sound Cannot Be Feasibly Joined.**

Under the required Rule 19 analysis, the Court must next determine whether Select Sound can feasibly be joined to this litigation. If joinder is feasible, the appropriate relief is compulsory joinder of a required party under Rule 19(a)(2). If joinder is not feasible, then dismissal under Rule 12(b)(7) may be appropriate if "equity and good conscience" favor dismissal.

Schneiker alleges that the Court has diversity jurisdiction over her claims pursuant to 28 U.S.C. § 1332. (ECF No. 17 ¶4.) She also alleges that she is a Wisconsin citizen, CEC is an Iowa corporation, and Select Sound is a Wisconsin company. (*Id.* ¶¶1–3.) Under § 1332, the Court's diversity jurisdiction only extends to controversies with complete diversity, meaning no defendant shares the same state citizenship as any plaintiff. *Big Shoulders Cap. LLC v. San Luis & Rio Grande R.R., Inc.*, 13 F.4th 560, 571 (7th Cir. 2021). Because Schneiker alleges that both she and Select Sound are Wisconsin citizens, Select Sound cannot be joined without destroying diversity.

And while Schneiker rightly points out that the Seventh Circuit prefers that an absent party claim its interest, Select Sound does not have that option. Not only would its addition to this suit be fatal to the Court's diversity jurisdiction, but Select Sound is also subject to the Asset Purchase Agreement's forum-selection clause, which requires that disputes under the agreement be litigated in state or federal courts in Iowa.[3] (*See* ECF No. 22-1 at 19.) Thus, it is not feasible to join Select Sound to this lawsuit.

---

[3] The Court declines to address whether Schneiker's claims are likewise bound by the forum-selection clause, as doing so is not necessary to the disposition of her claims.

### C. Select Sound Is an Indispensable Party to Counts VIII and IX.

When joinder of a required party is not feasible, the Court "must determine whether, in equity and good conscience, the [claims] should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). "If there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as 'indispensable' and the action is subject to dismissal . . . under Federal Rule of Civil Procedure 12(b)(7)." *Thomas*, 189 F.3d at 667. In making this determination, the Court considers (1) the extent to which judgment in the party's absence might prejudice that party or existing parties; (2) the extent to which the Court may fashion relief to avoid or lessen that prejudice; (3) whether judgment rendered in the party's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the claims were dismissed for nonjoinder. Fed R. Civ. P. 19(b)(1)–(4).

"The Seventh Circuit has repeatedly explained that 'a contracting party is the paradigm of an indispensable party.'" *Chaudry v. Musleh*, No. 17 C 1813, 2018 WL 3361846, at *4 (N.D. Ill. July 9, 2018) (quoting *Davis*, 268 F.3d at 484; *Hall*, 100 F.3d at 479). CEC argues that Select Sound fits squarely within the Seventh Circuit's repeated declaration that "a contracting party is the paradigm of an indispensable party." (ECF No. 24 at 2, 6 (quoting *Chaudry*, 2018 WL 3361846, at *4; *Davis*, 268 F.3d at 484).)

Schneiker does not directly address CEC's contention, choosing instead to invoke inapplicable United States Supreme Court precedent and insisting that the Rule 19(b) factors weigh against dismissal. (*See* ECF No. 23 at 13–16.) Neither approach changes the Court's analysis. Schneiker cites *Arkansas v. Texas*, 346 U.S. 368, 369–70 (1953), and argues that "the United States Supreme Court has held that a third party to a tortious interference claim is not an indispensable party to litigation." (*Id.* at 16.) In that case, the Supreme Court held that the William Buchanan Foundation was not an indispensable party to Arkansas's suit alleging that Texas had unlawfully interfered with its contract with the Foundation. 346 U.S. at 369. *Arkansas* is inapplicable for several reasons. First, the case is more than seventy years old and precedes the modernization of Rule 19. *See* Fed. R. Civ. P. 19 advisory committee's notes to 1966 amendment. And it does not purport to interpret that rule, its more recent amendments, or the modern standards for joinder. Second, the controversy at issue is materially different from the current dispute. In *Arkansas*, the Foundation contracted to give $500,000 to the University of

Arkansas to assist in its construction of a new hospital. 346 U.S. at 369. Texas filed suit in state court to enjoin the Foundation from performing the contract, arguing that Texas law required the Foundation's trust funds to be expended for the benefit of Texas residents. *Id.* Arkansas responded with a complaint against Texas to the Supreme Court, alleging that Texas was unlawfully interfering with its contract with the Foundation. The Court concluded that the Foundation was not an indispensable party to Arkansas's suit: "However appropriate it might be to join the Foundation as a defendant in the case, the controversy is between Arkansas and Texas—the issue being whether Texas is interfering unlawfully with Arkansas' contract." *Id.* at 370 (citation omitted). Thus, *Arkansas* involved a single contract to which the defendant, Texas, was not a party and the only legal question was whether Texas possessed the right to declare the Foundation's contract invalid. Schneiker's claims, in contrast, are predicated on two separate contracts—one between the defendant and the unavailable party—and her claims rely on the supposition that CEC, the defendant, breached its separate contract with Select Sound, the unavailable party. While Schneiker is correct that a third party to a tortious interference claim is not necessarily indispensable to resolution of that claim, Schneiker's claim is one in which joinder is necessary.

Schneiker's fundamental problem stems from her efforts to dress up breach of contract claims as torts. By trying to assert tort claims, she necessarily asks this Court to decide Select Sound's right to payment from CEC under the Asset Retention Agreement and, derivatively, her right to payment from Select Sound under the Retention Agreement. Under Rule 19, she cannot do so without Select Sound's presence.

With respect to the Rule 19(b) factors, Schneiker argues there is minimal risk that proceeding in this Court on Counts VIII and IX would prejudice Select Sound or the existing parties. (ECF No. 23 at 14–15.) But, as explained above, allowing Schneiker's claims to proceed would create a substantial risk of prejudice to either Select Sound, CEC, or both. Her allegations make it clear that she is asking the Court to determine not only her rights under the Retention Agreement, to which Select Sound is a party and unable to defend its interests, but more importantly to determine Select Sound's right to payment from CEC under the Asset Purchase Agreement.

Schneiker also misses the point in arguing that the Court may accord a full judgment on *her claims* without Select Sound present. (*Id.*) "[T]he ability to accord relief dwindles in

importance when compared with the significance of [Select Sound's] interest in the contracts at issue here." *See Hall*, 100 F.3d at 480. Schneiker is also incorrect in claiming she would not have an adequate remedy if the Court were to dismiss these claims. (ECF No. 23 at 15.) She has not plausibly suggested that she cannot bring these or similar claims against CEC in Iowa where Select Sound may be joined to the litigation and the parties' rights and obligations can be decided by a court that is not forced to determine a party's contractual rights in its absence.

At bottom, Schneiker's arguments fail to convince the Court that it would be appropriate to proceed in Select Sound's absence. Despite her arguments to the contrary, Schneiker's allegations establish that she is asking the Court to ascertain not only her rights, but CEC's and Select Sound's rights and obligations under both the Retention Agreement and the Asset Purchase Agreement. While Schneiker is correct that "dismissal is not the preferred outcome under [Rule 19]," (ECF No. 23 at 16 (quoting *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632, 634 (7th Cir. 2009))), Select Sound's close connection to Schneiker's claims necessitates its presence. As a party to both agreements, Select Sound is indispensable to claims arising from those agreements, despite their presentation as tort claims.

## CONCLUSION

As explained above, Schneiker has failed to state a claim for civil theft pursuant to Wis. Stat. §§ 895.446, 943.20(1)(b) and Select Sound is an indispensable party to her claims arising from the Retention Agreement and Asset Purchase Agreement. Accordingly, the Court will grant CEC's motion and dismiss Count III pursuant to Rule 12(b)(6) and Counts VIII and IX pursuant to Rule 12(b)(7).

**IT IS HEREBY ORDERED** that Defendant Communications Engineering Company's Motion to Dismiss, ECF No. 21 is **GRANTED**. Counts III, VIII, and IX of the Amended Complaint are **dismissed**.

Dated at Milwaukee, Wisconsin on March 12, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge